IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Mary H. Ross, | ) Civil Action No. 8:06-3410-TLW-BHH |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, Commissioner of Social Security, | ) **OF MAGISTRATE JUDGE** |
| Defendant. | ) |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Mary H. Ross, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for Supplemental Security Income ("SSI") under the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 44 years old as of the Administrative Law Judge's (ALJ) decision. (R. at 60.) She has a high school education and has worked as a tanning salon manager, housekeeper, and babysitter. (R. at 76, 80-89.)

The plaintiff protectively filed her application for SSI on May 3, 2004, alleging disability since October 13, 2003, due to stress, nerves, depression, weight loss, irritable bowel syndrome, and back and neck pain. (R. at 60-61, 71-81.) The plaintiff's application was denied initially and upon reconsideration. (R. at 31-35, 37-39.) At a *de novo* hearing held on February 1, 2006 (R. at 287-339), an ALJ found that plaintiff could perform other

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

unskilled light jobs existing in significant numbers in the national economy, despite her limitations. (R. at 27-28.) On October 6, 2006, the Appeals Council denied plaintiff's request for a review of the ALJ's decision, (R. at 7-10), thereby making the ALJ's decision the Commissioner's final decision of judicial review.

The ALJ made the following findings:

1. There is insufficient evidence to conclude whether or not claimant has engaged in substantial gainful activity since October 13, 2003, the alleged onset date (20 CFR §§ 416.920(b) and 416.971 *et seq*.)

2. The claimant has the following medically determinable severe impairments: anxiety and depression (20 CFR § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform unskilled work that does not require frequent interaction with the general public.

5. The claimant cannot do her past relevant work (20 CFR § 416.965).

6. The claimant was born on February 12, 1962, and was 42 years old on the date the application was filed, which is defined as a younger individual age 18-44 (20 CFR § 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR § 416.964).

8. The claimant has no transferable job skills, SSR-82-41 (20 CFR § 416.968).

9. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 416.960(c) and 416.966).

10. The claimant has not been under a "disability," as defined in the Social Security Act since May 3, 2004 (20 CFR § 416.920(g)), the date the application was filed.

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

>impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to find the plaintiff's fibromyalgia was severe; (2) requiring objective evidence of fibromyalgia; (3) ignoring physical limitations of fibromyalgia, even as a non-severe impairment; and (4) failing to give proper weight to the opinions of her treating physician. The plaintiff also disagrees with the ALJ's credibility determination but that objection will be considered in conjunction with those concerning fibromyalgia.

**I.      Fibromyalgia**

The plaintiff first complains that the ALJ failed to find that her fibromyalgia was a severe impairment. The following evidence of fibromyalgia was before the ALJ. The plaintiff's primary treating physician, Dr. Jack Brunson, diagnosed the plaintiff with fibromyalgia "by multiple trigger points." (R. at 218.) The plaintiff complained to Dr. Brunson that she was in a lot of pain and that her prescribed medicines were not helping. (R. at 225.) Dr. Brunson also noted that the plaintiff had pain in her joints, neck, shoulders, elbows, and generally hurt "everywhere." (R. at 226.)

In a clinical assessment, Dr. Brunson reflected that the plaintiff's pain is "profound and intractable" and that "it virtually incapacitates" her. (R. at 197.) Dr. Brunson also noted that physical activity such as walking, standing, bending, stooping, and moving would increase the pain to such a degree as to require increased medication for pain or substantial amounts of bed rest. *Id.* Dr. Brunson indicated that such increased amounts of medication would be expected to limit her ability to perform work duties. *Id*.

The plaintiff herself testified that she experiences sharp pain and can neither sit for extended periods of time nor maintain concentration due to the pain. (R. at 306, 308.) The vocational expert ("VE") testified that the plaintiff could not work with the pain as described by her and Dr. Brunson. (R. at 336.)

As an initial matter, the ALJ's decision is imminently thorough in every respect, and she either summarizes or specifically recites all of the evidence of fibromyalgia in this case. (See R. at 19, 20, 24, 25, 26.) The plaintiff focuses principally on the ALJ's consideration of the evidence at page 19 of the record, where she states: "Dr. Brunson diagnosed fibromyalgia 'by multiple trigger points,' although these are not noted anywhere else in his report." (R. at 19.) The plaintiff complains that this is an insufficient analysis upon which to dismiss fibromyalgia as a severe physical impairment. If this were the extent of the ALJ's analysis, the Court might agree. But it is not.

The ALJ noted that Dr. Brunson offered "conservative treatment" and, while sympathetic to her claim of disability, "has never referred her for pain management or to any specialists. (R. at 24.) The ALJ further found that Dr. Brunson provided no further "insight into the reason for his finding that the claimant has profound and incapaciting pain that cannot be treated." (R. at 26.) The Court agrees that Dr. Brunson's notes are wanting. While the plaintiff is correct that "multiple trigger points" is the diagnostic criteria for fibromyalgia, *see Green-Younger v. Barnhart*, 335 F. 3d 99, 108 & n.14 (2d Cir. 2002); *Preston v. Secretary*, 854 F.2d 815, 820 (6th Cir. 1988), that diagnosis alone does not substantiate Dr. Brunson's conclusion concerning the *extent* of the plaintiff's pain – that it is fully incapacitating and essentially untreatable. Nothing in his medical notes suggests that the plaintiff's fibromyalgia is as limiting as recommended in his answers to the clinical assessment questionnaire (R. at 197). In fact, Dr. Brunson's notes reflect that his own physical examinations were essentially normal and did not provide a basis for the extensive limitations in the assessment, revealing instead that the plaintiff retained a normal gait and station and could participate in an exercise program. (R. at 20, 25; see, e.g., R. 133-34, 136-37, 201-03.)

Lastly, the ALJ rejected fibromyalgia as severe because he found the plaintiff generally incredible and her specific complaints of pain not believable. In doing so, the ALJ properly applied the two-step process for the evaluation of pain and subjective allegations as prescribed in *Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). (See R. at 23-24.) The plaintiff concedes as much. (Pl. Brief at 10.) The ALJ found that the plaintiff was convicted of shoplifting and was untruthful about it.[2] The ALJ further found that the plaintiff had avoided her taxes for many years. (R. at 23.) The ALJ concluded that as a result of the plaintiff's propensity for theft and deception, her allegations of disability offered to obtain money benefits should be carefully evaluated. *Id*.

---

[2] The plaintiff continues to represent that there is "utterly no evidence that [she] was convicted of shoplifting." (Pl. Brief at 10.) The record reveals that she was. (R. at 122.)

6

The ALJ further discounted her allegations of pain based on evidence of daily activities including driving, shopping, attending to sick family members, and taking care of dogs. (R. at 24.) Dr. Karl Bodtorf, a consultative psychologist, also found that the plaintiff was capable of taking care of her basic needs and that she could handle her daily financial needs. (R. at 24, 150-54.)

The ALJ cited all these reasons for not finding her fibromyalgia severe. These reasons are substantial. The ALJ's analysis was not deficient in the way the plaintiff alleges and was expressly reasoned and explained.

As a separate assignment of error, the plaintiff further contends that the ALJ essentially required objective evidence of fibromyalgia. The Court agrees that the symptoms of fibromyalgia are almost entirely subjective and that there are no laboratory tests to identify its presence or severity.[3] *See Green-Younger*, 335 F. 3d at 108. Even still, courts have recognized that the pain suffered by those diagnosed with fibromyalgia can be disabling. *See, e.g., Ward v. Apfel*, 65 F. Supp. 2d 1208 (D. Kan.1999).

But, the ALJ did not express doubt about whether or not the plaintiff actually had fibromyalgia. Rather, the ALJ questioned the degree of its limiting effects. As a result, the ALJ considered both subjective and objective evidence of record, as described above, and found that the limitations alleged by the plaintiff were not credible. The ALJ's emphasis on considerations of credibility, motivation, and medical evidence were appropriate as was his consideration of the plaintiff's attempts to find relief from pain, willingness to try treatment, regular contact with a doctor, and daily activities. *See Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987; *see also Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (a claimant's daily activities, such as performing exercise, cooking, and doing laundry were

---

[3] Currently, no objective findings or lab test for fibromyalgia are commonly accepted in the medical community. The most widely accepted criteria for the diagnosis of fibromyalgia are the American College of Rheumatology Criteria for the Classification of Fibromyalgia. There are two criteria: a history of widespread pain, as defined in the criteria, and pain in 11 of 18 tender point sites when pressed or "palpated" by a physician. The criteria state that for a tender point to be considered "positive," the patient must say the palpation was painful.

inconsistent with the claimant's complaints of excruciating pain and inability to perform basic physical work activities); *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (a claimant's activities are proper factors to consider); *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (finding that ALJ did not err by considering inconsistency between the claimant's level of treatment and her claims of disabling symptoms); *Murphy v. Sullivan*, 1994 WL 677656, at * 1-2 (4th Cir. December 05, 1994) (finding medication effective).

The plaintiff obviously disagrees with the ALJ's conclusion. But it can neither be said that the ALJ ignored evidence of the plaintiff's fibromyalgia or that there was not substantial evidence for the ALJ to conclude as she did. As discussed, there was. Even to the extent the plaintiff has produced evidence favorable to her, the Court cannot disturb the decision of the ALJ which is based on other substantial evidence. *See Blalock v. Richardson*, 483 F.2d at 775.

## II.     Physical Limitations

The plaintiff alternatively argues that even if her fibromyalgia is not considered severe, the ALJ was required to assess it as a non-severe impairment to determine its effect on her ability to function and perform work. But there can be no question that the ALJ did consider her alleged physical limitations. (R. at 24-26.) As described above, the ALJ thoroughly evaluated the plaintiff's fibromyalgia and the alleged limitations it created. For the most part, she concluded that they were not credible. The ALJ instead believed that the plaintiff engaged in a wide range of daily activities, discussed above, "consistent with a capacity for unskilled work." (R. at 25.) In addition to the evidence already discussed, the ALJ noted that the State Agency medical consultants found no exertional limitations and that "she had full range of motion, full strength in the upper and lower extremities." (R. at 25, 169-174, 175.) These findings are consistent, at least in part, with Dr. Brunson's conclusion that she could participate in an exercise program, as previously noted. (R. at 136-37.) The ALJ simply did not find evidence of physical limitations of the nature alleged

by the plaintiff and explained her reasons for doing so. The evidence upon which she relied is substantial.

### III. Treating Physician

The plaintiff lastly contends that the ALJ did not accord Dr. Brunson's opinions appropriate weight. Specifically, the plaintiff contends that the ALJ was required to accept Dr. Brunson's disability recommendation insofar as there was no other evidence of record inconsistent with that opinion.

It is true that the opinion of a treating physician is entitled to controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. 416.927(d)(2) (2002); *Mastro v. Apfel*, 370 F.3d 171 (4th Cir. 2001). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. Social Security Ruling 96-2p.

The Court has already discussed the ALJ's treatment of Dr. Brunson's opinions and will not recount it here. In short, however, it is clear from the decision that the ALJ found inconsistencies between what Dr. Brunson reflected in his notes about the severity of the plaintiff's condition and what he ultimately concluded on the clinical assessment. (R. at 26; *see supra*.) These internal inconsistencies are a sufficient basis to deny controlling weight to the opinion of a treating physician. *See Conklin v. Apfel*, 7 Fed. Appx. 238, 238 (4th Cir. 2001). Moreover, his opinions were inconsistent with other substantial evidence of record, including the plaintiff's own testimony concerning her activities and the opinions of State Agency medical consultants, as discussed above. For all the reasons discussed herein, the ALJ's decision to discount the weight afforded Dr. Brunson's opinions was based on substantial evidence.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>United States Magistrate Judge

February 8, 2008
Greenville, South Carolina